IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, )<br>  )<br>Plaintiff, )<br>  )<br>v. )<br>  )<br>5.88 ACRES OF LAND, OWNED BY )<br>WENDELL WRAY FLORA AND MARY )<br>MCNEIL FLORA, )<br>  )<br>Defendant. ) | Civil Action No. 7:19-cv-00225<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire a permanent easement and temporary easements on numerous properties, including this property located in Roanoke County. On March 7, 2018, the court entered an order in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 635), granting MVP immediate possession of the easement on this property. The trial of this matter was scheduled to begin on April 8, 2020, but it was continued generally because of COVID-19.

MVP filed two motions in limine (Dkt. Nos. 19 and 25), a motion for partial summary judgment on the issue of whether there is unity of use between the larger and smaller parcel (Dkt. No. 16), and a motion to exclude the testimony of Dennis Gruelle and Sean Horne, defendants' expert witnesses (Dkt. No. 18). At the hearing on these motions, MVP's second motion in limine (Dkt. No. 25) was resolved by agreement of the parties, and the court dismissed that motion as moot. (Dkt. No. 29.) The court also determined that defendants did not oppose the exclusion of the matters set forth in parts six (examination of Thompson concerning vacated order), seven (evidence of settlement offers and communications), and eight (evidence of amounts paid for easements on

other properties) of MVP's motion in limine (Dkt. No. 19), so the motion is granted as to those matters. At the hearing, the court took the following under advisement: parts one through five of MVP's first motion in limine (Dkt. No. 19), MVP's motion to exclude expert testimony (Dkt. No. 18), and MVP's motion for partial summary judgment on the issue of the larger parcel (Dkt. No. 16).

Also before the court are motions in limine filed by the Floras (landowners / defendants): (1) an omnibus motion pertaining to various topics, discussed herein (Dkt. No. 36); (2) a motion pertaining to the highest and best use of the subject property (Dkt. No. 37); and (3) a motion to exclude evidence of an alleged assault of an MVP agent by landowner Mary Flora (Dkt. No. 38.)

For the reasons stated below, MVP's motion for partial summary judgment is denied; MVP's motion to exclude expert testimony is denied; MVP's motion in limine is granted in part and denied in part; landowners' omnibus motion in limine is granted in part and denied in part; landowners' motion pertaining to highest and best use is denied; and landowners' motion to exclude evidence of an alleged assault is granted. Of course, with regard to motions in limine, the court may revisit these rulings at trial, depending on the evidence elicited and the context in which the evidence is offered.

## I.  BACKGROUND

MVP has condemned easements over a 55.91-acre tract owned by the Floras, identified in the main pipeline case complaint as MVP Parcel No. VA-FR-017.21 (the Condemned Tract). The easements generally run along the northern and southwestern boundaries of the land. (Appraisal Report of Wesley Woods (Woods Report) 27–28 of 147, Dkt. No. 17-2.) The Condemned Tract is used for farming and is improved by a farmhouse and outbuildings. (*Id.* at 47.)

The Floras also own a separate, one-acre tract of land (the Residence Tract) that is improved

2

by a single-family residence, is fenced around the perimeter, and has deeded access to the highway. (Appraisal Report of Jared L. Schweitzer (Schweitzer Report) 38 of 180, Dkt. No. 17-1.) The Condemned Tract surrounds and engulfs the Residence Tract. (Woods Report 27.) The Condemned Tract is used for farming, and the Residence Tract is used for a single-family residence. (Woods Report 48, 62.) The Residence Tract and the Condemned Tract used to be in the same tract, but, according to the deeds, the Residence Tract has been a separate tract since 1978. (*See* Dkt. No. 23-2 (December 11, 1978 Deed).) According to landowners' appraiser, the parcels were "separated in 1988 to benefit from the County's land use program which minimizes property tax on farmed land." (p. 7 of 34 Dkt. 17-3.) According to landowners' brief, the Flora family split the house from the farm in 1988 for estate planning and land use reasons. It appears, the properties have always been, and still are, used together as a working farm. The house is on a separate parcel for reasons other than actual use, and the Floras live on and work the farm every day. The well for the house is on the farm parcel. MVP is not taking an easement on the Residence Tract.

      Defendants' appraiser, Gruelle, contends that the highest and best use of the Condemned Tract and the Residence Tract is for residential development. According to Gruelle, the highest and best use involves changing lines to sell lots of five to fifteen acres, including a lot with the farmhouse and a lot with the residence. (Appraisal Report of Dennis Gruelle (Gruelle Report) 17 of 34, Dkt. No. 17-3.) Defendants' plan for residential development involves creating new lot lines, developing private well and septic for each proposed lot, and a driveway for access. (Report of Sean Horne 2–3 of 6, Dkt. No. 17-4.)

      MVP's appraisers, Schweitzer and Woods, find that the highest and best use for the Condemned Tract is residential development, but they opine that single-family residence is the highest and best use for the Residence Tract. (Schweitzer Report 38–40; Woods Report 62–66.)

II. DISCUSSION

A. Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance. Legal standards regarding the same are set forth herein.

**1. Just compensation for partial permanent takings, including severance damages**

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). When the government condemns private property for a public purpose, it must pay just compensation for that property. Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings. *United States v. Miller*, 317 U.S. 369, 379–80 (1942). *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act). The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder." *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)). Moreover, "value [of the condemned land] is to be ascertained as of the date of taking." *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

**2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See Mountain Valley Pipeline, LLC v. 1.23 Acres of Land Owned by Eagle's Nest Ministries, Inc.*, Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *Mountain Valley Pipeline, Inc. v. 6.50 Acres of Land Owned by Sizemore Inc. of Va.*, Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a

5

nexus between those hazards and/or the public perception in the marketplace—specifically, the marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Just compensation for temporary taking

Just compensation for a temporary taking is limited to the market rental value of the property subject to the temporary taking. *See United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995); *see also Mountain Valley Pipeline, LLC v. 1.89 Acres of Land, Owned by Briarwood Dev't, LLC*, Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019). Defendant bears the burden of proving the amount of just compensation. *See United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991).

### 4. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under

*Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

### 5. Summary judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

8

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**B. MVP's Motion for Partial Summary Judgment regarding Unity of Use / Larger Parcel**

Fair market value is determined by considering the property's "highest and best use," which is the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future." *Olson v. United States*, 292 U.S. 246, 255 (1934); *see also United States v. 1.604 Acres of Land*, 844 F. Supp. 2d 668, 679 (E.D. Va. 2011). "In order for a landowner to claim just compensation based on a proposed use, there must be evidence that the use is reasonably probable within the reasonably near future—and hence, not a speculative use." *1.604 Acres of Land*, 844 F. Supp. 2d at 679 (citing *Olson*, 292 U.S. at 255–57). To determine the highest

---

[1] Rule 56 applies in this case because the rule governing condemnation proceedings in federal court (Rule 71.1) has no provisions governing summary judgment. *See* Fed. R. Civ. P. 71.1(a); *United States v. Tree Removal Rights*, NO. 3:17-CV-128-DMB-RP, 2018 WL 6072008, at *1 (N.D. Miss. Nov. 19, 2018).

and best use, the appraiser must analyze whether the use is (1) physically possible, (2) legally permissible, (3) financially feasible, and (4) maximally productive. *Id.* Each appraiser in this case analyzed these factors.

The parties agree that the highest and best use of the Condemned Tract is for residential development but disagree about the Residence Tract. Defendants' experts opine that the Condemned Tract and the Residence Tract should be valued together; MVP's experts maintain that they should be valued separately, with the highest and best use of the Residence Tract still being single-family residential. Each appraisal includes the appraiser's reasons for his conclusion, and each appraisal includes a larger parcel analysis.

As this court set forth in *Atl. Coast Pipeline, LLC v. 0.07 Acre, More or Less, in Nelson Cty., Virginia*, 396 F. Supp. 3d 628, 633–34 (W.D. Va. 2019),

> One of the working rules to do substantial justice in eminent domain proceedings "is that a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it." United States v. Miller, 317 U.S. 369, 374-75, 63 S.Ct. 276, 87 L.Ed. 336 (1943). "The larger parcel may be all of one parcel, part of a parcel, or several parcels, depending to varying degrees on unity of ownership, unity of use, and contiguity." (Dkt. 81-6 (Harvey Report) at 20 (quoting Michael McKinley, Review Theory and Procedures: A Systematic Approach to Review in Real Property Valuation, at 56 (Chicago Appraisal Institute 2015))). In condemnation, the larger parcel is "the tract or tracts of land which are under the beneficial control of a single individual or entity and have the same, or an integrated, highest and best use." (Dkt. 90 at 3 (quoting J.D. Eaton, Real Estate Valuation in Litigation, at 76 (2d ed. The Appraisal Institute 1995))).

Here, it is undisputed that there is unity of ownership and contiguity. The question is whether the tracts have the same or integrated highest and best use, and the experts disagree. As this court has noted, this is an issue for the court to decide. *MVP v. 1.81 Acres of Land* (Jones II), Civil Action No. 7:19-cv-00151, 2019 WL 4007924, at *1 (W.D. Va. Aug. 23, 2019) (citing Fed. R.

Civ. P. 71.1(h)(1) and collecting cases).

Neither "non-contiguousness" nor "non-use" is fatal to a theory combining separate tracts. *See United States v. 105.40 Acres in Porter Cty., State of Ind.*, 471 F.2d 207, 211 (7th Cir. 1972). Instead, the "relevant question . . . [is] whether in the 'reasonably near future' there was a 'reasonable probability' of the lands in question being put to their 'highest and best use' in combination with the main tract so as to affect their market value." *Id.* (quoting *United States v. Powelson*, 319 U.S. 266, 275–76 (1943)); *see also United States v. Certain Land Situated in the City of Detroit*, 188 F. Supp. 2d 747, 757 (E.D. Mich. 2002) (the "reasonable probability of condemned property being combined with other tracts in the reasonably near future for some unitary use is also the standard applicable for determining whether such a unitary use may be considered the 'highest and best use' of the condemned property").

It is undisputed that the current use of the Residence Tract is for single-family residence; this is presumed to be the highest and best use of the tract. *United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991) ("In the absence of proof to the contrary, the highest and best use of property is presumed to be its current use."); *MVP v. 1.89 Acres* (Briarwood), Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019). To overcome this presumption, defendants must show that there is a "reasonable probability that the separate tracts would have been combined for such integrated use." *United States v. Mattox*, 375 F.2d 461, 463 (4th Cir. 1967).

Defendants offered evidence, through their experts, that the Residence Tract could be subdivided along with the Condemned Tract at some point in the future. They assert that builders and developers would naturally want to control the entire parcel for increased flexibility and utility. Their appraiser analyzed whether the use is (1) physically possible, (2) legally permissible, (3)

11

financially feasible, and (4) maximally productive.

MVP has failed to meet its burden to show that there is no genuine issue of material fact in dispute regarding the larger parcel and highest and best use. A review of the record in a light most favorable to defendants shows that the appraisals clearly demonstrate a genuine dispute of fact. For these reasons, the court concludes that MVP's motion for partial summary judgment (Dkt. No. 16) is denied. At trial, the court will hear from the experts, make a determination regarding the issue, and instruct the jury accordingly.

### C. MVP's Motion to Exclude Experts

MVP moves to exclude expert testimony by Gruelle and Horne on highest and best use for the same reasons stated in its motion for partial summary judgment. For the reasons stated above, this motion (Dkt. No. 18) is denied

### D. MVP's Motion in Limine

#### 1. Evidence of subdivision plans

MVP seeks to exclude evidence of a conceptual subdivision prepared for this litigation for the reasons stated in its motion to exclude defendants' experts. MVP did not assert any other reason in its motion. Because the motion to exclude defendant's experts is denied, this motion, as to subdivision plans, is denied for the same reasons.

#### 2. Evidence of fear of pipelines and claims that many buyers would not purchase the Property because of the Pipeline

MVP also moves to exclude expert testimony on the fear associated with gas pipelines. Gruelle's report makes various statements pertaining to fear and stigma associated with pipeline easements based on interviews with brokers who stated that "many buyers are afraid of a gas pipeline" and "do not want to look at properties with gas pipelines." (Gruelle Report 30.) The court has excluded this type of evidence before and does so again in this case because "[t]here is no

evidence linking the alleged diminution of these property sales to fear and stigma as opposed to other factors." *MVP v. 10.67 Acres* (Doe Creek), Civil Action Nos. 7:18-cv-00609, 7:18-cv-00611, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019). Also, "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony." *MVP v. 1.81 Acres* (Jones I), Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *6 (W.D. Va. Aug. 21, 2019).

### 3. Claims that the Pipeline is dangerous or unsafe and evidence of other pipeline accidents or incidents

The court has repeatedly excluded this type of evidence and does so again in this case. *See Doe Creek*, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019) (excluding evidence because expert did not "rely on market evidence connecting pipeline safety, accidents, and fear and stigma associated with pipeline easements to diminution in value"); *Baker*, 2019 WL 4306981, at *5 (excluding evidence about high consequence areas (HCAs) and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property"); *Jones I*, 2019 WL 3945272, at *5 (excluding testimony because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace . . . and a diminution in value of the property").

### 4. Evidence of alleged impact and possible damages from construction

Gruelle's report also comments on the alleged impact of temporary construction activities, such as the "uncertain" impact of "existing springs, wells, drainage and (especially in sloping areas) soil compaction." (Gruelle Report 29.) First, the court notes that speculative testimony about

13

"uncertain" future consequences is not admissible testimony. Additionally, because "compensable loss in the eminent domain context is limited to risks that are inherent in the easement," *Doe Creek*, 2019 WL 5929283, at *7, this evidence is excluded. *See also Baker*, 2019 WL 4306981, at *8.

### 5. Evidence of other appraisals

MVP notes that Gruelle's report refers to various conclusions and opinions of other appraisers. Defendants oppose the exclusion of only one of those opinions: an appraisal by Samuel Long prepared for the purpose of estimating security on the subject Property. In *Lucki*, the court left open the possibility that such evidence could be admissible. *MVP v. 1.85 Acres* (Lucki), Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *8 (W.D. Va. Mar. 5, 2020). Again, the court will not exclude this appraisal "merely because it was an appraisal of the Property for purposes of setting the amount of security, which is the only argument made by MVP in its motion. If the appraisal is shown to be relevant and a proper foundation for its admission into evidence is made, then it will not be excluded because it was for purposes of setting security." *Id.* Also, as before, the court "makes no finding at this point whether the appraisal is a party-opponent admission." *Id.* The court also reserves ruling on whether the security appraisal is inadmissible hearsay. With regard to these matters, the court denies the motion without prejudice.

### E. Landowners' Omnibus Motion in Limine

#### 1. View of the property

Landowners move for a jury view of the subject property during trial. MVP does not object. While a jury view is not required by law, the court agrees that an in-person jury view is helpful, where practicable, because the jury is to determine the just compensation for the taking. Thus, the court will grant the motion for a jury view subject to the conditions during the trial dates regarding logistics (including, but not limited to, access to the property, weather, and transportation), security

(including, but not limited to, the health and safety of the jurors, parties, counsel, and court personnel), and time constraints. Should the court determine that an in-person jury view is not practicable at the time of trial, then the parties will have the opportunity to use photographs, or pre-recorded or live video.

### 2. Opening and closing

Landowners move to open and close at trial because they bear the burden of proof. MVP does not oppose this motion, which is granted.

### 3. Evidence of project itself

In this motion, landowners complain that MVP seeks to exclude evidence of its own project. Landowners wish to present evidence of the text on pipeline markers, including statements about emergencies, in order to show that the pipeline represents an inherent risk and is subject to explosion if an accident occurs. (Dkt. No. 36 at 3–4.) MVP does not object to evidence that there will be pipeline markers on the property, but it does object to any statements on the markers warning about emergencies or accidents. Gruelle does not describe the statements or warnings on the markers, nor does he attempt to establish a link between the markers and an actual diminution in value.

The court, without objection by MVP, will allow evidence that there are, or will be, pipeline markers on the property. Regarding landowners' desire to introduce evidence of the text on the markers, MVP and landowners have failed to provide the court with information about the text on the markers. Lacking this information, the court denies the motion regarding this issue without prejudice.

## F. Landowners' Motion in Limine Regarding Highest and Best Use

Landowners ask the court to rule as a matter of law, on a motion in limine, that the two

15

parcels be considered together under the larger parcel doctrine and that and that the highest and best use of the property is for residential use. As the court has noted, there are genuine disputes of material fact. Additionally, this is a motion in limine and not a motion for summary judgment. The motion (Dkt. No. 37) is denied.

**G. Landowners' Motion in Limine to Exclude Evidence of Alleged Assault**

Landowners seek to exclude evidence of charges against defendant Mary Flora for assaulting an MVP security contractor, and any resulting guilty plea entered by Ms. Flora. MVP agrees "not to introduce evidence of any charge or conviction of Ms. Flora if defendants do not call her as a witness." (Dkt. No. 42.) With that understanding, landowners' motion (Dkt. No. 38) is granted.

III.  CONCLUSION

For the reasons stated herein, MVP's motion for partial summary judgment (Dkt. No. 16) is DENIED; MVP's motion to exclude expert testimony (Dkt. No. 18) is DENIED; MVP's motion in limine (Dkt. No. 19) is GRANTED IN PART and DENIED IN PART as follows – it is denied as to part one (evidence of subdivision plans), it is granted as to part two (fear of pipelines and claims that buyers will not purchase), it is granted as to part three (evidence of danger and other accidents), it is granted as to part four (evidence of alleged impact and possible damages from construction), as to part five (evidence of other appraisals) it is granted without objection as to appraisals by persons other than Mr. Long and denied without prejudice as to appraisals by Mr. Long, it is granted without objection as to parts six (examination of Thompson concerning vacated order), seven (evidence of settlement offers and communications), and eight (evidence of amounts paid for easements on other properties); landowners' omnibus motion in limine (Dkt. No. 36) is GRANTED IN PART and DENIED IN PART as follows – it is granted as to a jury view (subject to conditions

<pre>
</pre>

on the trial dates), it is granted as to the right to open and close, and it is granted without objection as to the fact of pipeline markers on the property, and it is denied without prejudice as to the text on the pipeline markers; landowners' motion pertaining to highest and best use (Dkt. No. 37) is DENIED; and landowners' motion to exclude evidence of an alleged assault (Dkt. No. 38) is GRANTED without objection.

The clerk is directed to provide a copy of this memorandum opinion and order to counsel of record.

Entered: March 31, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge